**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

League of Women Voters of Colorado, Angela
Stevens, and June Waller,

        Plaintiffs,

    v.

Jena Griswold, in her official capacity as
Colorado Secretary of State,

        Defendant.

Case No. _____

---

**COMPLAINT**

---

Plaintiffs League of Women Voters of Colorado, Angela Stevens, and June Waller, for their Verified Complaint against Defendant Jena Griswold, in her official capacity as Colorado Secretary of State, ("Defendant"), state and allege as follows:

**INTRODUCTION**

1.  This is an action to enforce the constitutionally protected right of Coloradans to vote for an elected official, regardless of political affiliation. In 2025, the Colorado Legislature passed a new law, House Bill 25-1315 ("HB 25-1315" or the "House Bill"), that explicitly excludes voters from one party from participating in the election of state representatives, a practice long prohibited by the United States Supreme Court. Plaintiffs here—individual Coloradans and the League of Women Voters of Colorado ("LWVCO" or the "League") (collectively, the "Plaintiffs")—seek to preserve the People's crucial rights to participate in the legislative process by allowing all eligible voters to vote for their state representatives by invalidating HB 25-1315.

2.  It is a fundamental principle of American democracy that every citizen has the right to vote in every election because, in the words of James Madison, "The right of suffrage is a

fundamental Article in Republican Constitutions."[1] Thomas Jefferson concurred: "The influence over government must be shared among all the people."[2] The protection of every citizen's right to vote in the election of their representatives remains a fundamental tenet of our system of government.

3.      When proposing what would become the Voting Rights Act to Congress, Lyndon Johnson said, "[e]very American citizen must have an equal right to vote. There is no reason which can excuse the denial of that right. There is no duty which weighs more heavily on us than the duty we have to ensure that right."[3] Since the days of our founders, both federal and state courts have held the right of suffrage to be sacrosanct. The Supreme Court most recently explained that "[a]ny unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 (1969).

4.      Yet Section 1-12-203 of the Colorado Revised Statutes, as enacted in 2025 by Section 4 of House Bill 25-1315, creates *one-party elections* for state representatives by limiting the franchise in certain general assembly vacancy elections only to voters who are affiliated with the same political party as the former legislator(s) whose seat is vacant and to voters who are unaffiliated with any party, *i.e.*, prohibiting anyone from the *other* party from voting in that

---

[1] James Madison, *Note to His Speech on the Right of Suffrage, in* 1 THE FOUNDERS' CONSTITUTION ch. 16, doc. 26 (Philip B. Kurland & Ralph Lerner eds., Univ. of Chi. Press 1987) (1821), https://press-pubs.uchicago.edu/founders/documents/v1ch16s26.html.

[2] THOMAS JEFFERSON, NOTES ON THE STATE OF VIRGINIA 159 (Apex Data Services, Inc., Amanda Page and Sarah Ficke 2006) (1787), https://docsouth.unc.edu/southlit/jefferson/jefferson.html.

[3] Lyndon B. Johnson, Special Message to the Congress: The American Promise (Mar. 15, 1965), https://www.presidency.ucsb.edu/documents/special-message-the-congress-the-american-promise.

election. The premise of HB 25-1315, limiting who may vote for a state representative based entirely upon party affiliation, is unconstitutional on its face. It violates the First and Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983, and the rights guaranteed by Article II, Section 5, and Article VII, Sections 1 and 11 of the Colorado Constitution.

5.      LWVCO is committed to an informed and engaged electorate in Colorado and throughout the nation. Nonpartisan in everything that it does, the League promotes involvement in the political process for every citizen through its local, statewide, and national programs. Such programs involve extensive voter outreach, including "Get Out the Vote" initiatives for upcoming elections.

6.      House Bill 25-1315 prohibits each of the individual plaintiffs from voting to elect their state representatives if the incumbent is from another political party and fails to serve out her time of office, unconstitutionally removing the franchise from each of them.

7.      In addition, House Bill 25-1315 significantly burdens LWVCO and its members' ability to complete their nonpartisan mission to educate voters and provide them with the tools to make informed electoral decisions and participate in the election of their representatives. In order to conduct effective voter outreach and "Get Out the Vote" initiatives ahead of these newly created elections, effective canvassing now necessarily involves identifying voters by party. This practice is in direct contradiction to LWVCO's nonpartisan stance, mission, and advocacy in Colorado. LWVCO does not identify nor track the party affiliations of its members; LWVCO's "Get Out the Vote" initiative and other voter outreach initiatives are *never* party-specific. But the one-party elections under HB 25-1315 necessitate outreach only to voters of one party or unaffiliated voters.[4]

---

[4] Even if the LWVCO were to conduct this type of party-specific outreach—to be clear, it cannot do so and remain truly nonpartisan—such outreach under HB 25-1315 would monopolize LWVCO's already limited resources because it now requires any effective voter outreach to

Now, the LWVCO and its members are unable to conduct any meaningful voter outreach related to elections under HB 25-1315.

8.      The constitutionality of HB 25-1315 is not partisan: all citizens of Colorado have the constitutionally protected fundamental right to vote for their representatives. The House Bill, however, imposes a severe burden on the electoral process because it prohibits voters affiliated with a different party from the departing lawmaker from participating in the vacancy electoral process.

9.      The issues raised by HB 25-1315 were resolved over 50 years ago: "Statutes granting the franchise to residents on a selective basis [like the House Bill here] always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives." *Kramer*, 395 U.S. at 626–27. Because it infringes on the fundamental right to vote, HB 25-1315 must be viewed with "close scrutiny." *See id.* at 626.

10.      When "a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, [a court] must determine whether the exclusions are necessary to promote a compelling state interest." *Id.* at 627. Indeed, "the deference usually given to the judgment of legislators does not extend to decisions concerning which resident citizens may participate in the election of legislators and other public officials." *Id.* Not only is there no compelling state interest involved in holding party-only vacancy elections; there is no state interest at all. The House Bill cannot survive even a rational evaluation, let alone the close scrutiny applied to statutes that disenfranchise certain voters.

---

include party identification during canvassing. But, again, such a practice would irreparably damage LWVCO's well-established reputation as reliably nonpartisan in all its activities.

11.     Historically, Colorado's system for filling vacant state legislative seats has been flawed because it did not require a vote. Prior to the enactment of HB 25-1315, vacant General Assembly seats were filled by party-led vacancy committees—Colorado was one of only five states in the country that used party-led vacancy committees to fill open legislative seats—and that oversight cries out for redress by restoring the franchise to the citizens of that legislative district. For example, in January 2025, a vacancy committee of just ten people voted to designate Jamie Jackson as the representative of nearly 90,000 people in Colorado House District 41 in Arapahoe County to finish the two-year term of Iman Jodeh, who had been re-elected to the seat only two months earlier. Jodeh herself vacated the District 41 seat because she was appointed to the State Senate District 29 seat by a different vacancy committee, comprised of 35 people selecting her to represent the 162,000-person Arapahoe County district, after Senator Janet Buckner announced her retirement sixteen days after her re-election. By 2025, approximately twenty-five percent of Colorado legislators assumed office through the State's vacancy process.[5] The problem called out for a solution.[6]

12.     But the solution is not an exclusionary one-party election that is plainly unconstitutional and deliberately excludes voters because they are not registered with the party that holds a legislative seat. HB 25-1315 now allows only voters of a certain political party—the same party as the prior lawmaker—or voters of no political affiliation at all, to participate in the

---

[5] Brandon Richard, *Colorado Lawmakers Consider Changes to Vacancy Process for Legislative Seats*, Denver 7 (April 22, 2025, 6:30 AM), https://www.denver7.com/news/local-news/colorado-lawmakers-consider-changes-to-vacancy-process-for-legislative-seats.

[6] Marianne Goodland and Colorado Politics, *The Replacements: 28 Lawmakers Appointed to 29 Seats by Small Groups of Party Insiders*, Colorado Politics (February 3, 2024), https://www.coloradopolitics.com/2024/02/03/the-replacements-28-lawmakers-appointed-to-29-seats-by-small-groups-of-party-insiders-9c9d1c1c-c05f-11ee-bb94-733db635d798/.

election, denying the franchise completely to all other voters based entirely on party affiliation. The Constitution does not allow one-party elections where only unaffiliated voters and voters from the previous legislator's political party vote during vacancy elections while denying voters affiliated with a different party than the departing legislator's from participating in these elections. As the Supreme Court has explained, "[t]he need for exacting judicial scrutiny of statutes distributing the franchise is undiminished simply because, under a different statutory scheme, the offices subject to election might have been filled through appointment." *Kramer, supra,* 395 U.S. at 628–29 and n. 11.

13.    The House Bill's prescribed process to fill legislative vacancies applies a poultice that gives the false impression that voters registered in a district are exercising the franchise, but that is simply not true. Under the new process, vacancy committees select temporary representatives who assume office and the selected representatives are then elected in either an odd-year special election or an even-year general election. But adding electoral ratification by party to the vacancy committee process means elections which exclude tens of thousands of Colorado registered voters on the basis of party affiliation. In no uncertain terms, the House Bill transforms the vacancy selection process into a scheme dividing Coloradans' fundamental right to vote along pure party lines.

14.    In America, if a matter is put to a vote—if someone is being elected to serve as a state legislator for a district—then everyone registered to vote in that district has a right to vote on who is elected to that seat. Under the guise of fixing a broken vacancy replacement process in the Colorado General Assembly, HB 25-1315 deploys unlawful election procedures that deprive certain Colorado voters—those affiliated with a different political party than the departing lawmaker—their constitutionally guaranteed right to vote. *See, e.g.*, *Reynolds v. Sims*, 377 U.S.

533, 555 (1964) ("The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.").

15.     Under the House Bill, it is as if the elections following a vacancy were a primary, open only to party members, rather than the free and fair general elections guaranteed to all Coloradans in which every eligible citizen is allowed to vote for their state legislators. Primary and general elections simply are not the same and the House Bill unconstitutionally confuses them.

16.     Confusing things even more, under the House Bill, the new odd-year vacancy elections would take place alongside the statewide elections for ballot issues, local candidates, and other items on which everyone *is* entitled to vote, highlighting the one-party nature of these state legislative elections.

17.     The extent to which these one-party elections will determine a portion of the Colorado State Legislature is significant: in 2025 alone, six lawmakers were appointed through vacancy committees: Republican Sen. John Carson, Democratic Sen. Matt Ball, Democratic Sen. Iman Jodeh, Democratic Rep. Jamie Jackson and Democratic Sen. Katie Wallace. Two of these appointments came when lawmakers resigned *immediately* after winning reelection.[7] This scheme runs afoul of foundational elements of representative democracy and equal protection principles at the core of our political system.

18.     Compounding the problems caused by the House Bill, the promise of vacancy elections and reform is hollow and unconstitutional: the House Bill provides an opt-out clause of

---

[7] Sara Wilson, *Bipartisan Bill Would Reform Process for Vacancy-Appointed Lawmakers in Colorado*, Colorado Newsline (Apr. 1, 2025 6:11 PM), https://coloradonewsline.com/briefs/bipartisan-bill-would-reform-process-for-vacancy-appointed-lawmakers-in-colorado/.

vacancy elections altogether and allows a political party to "choose to continue to fill a vacancy in the general assembly by vacancy committee … *rather than by a major political party vacancy election* … if at least three-fourths of the total voting membership of the party's *state central committee* affirmatively votes to do so … no later than October 1 of the year preceding the year in which a major political party vacancy election would be held." C.R.S. § 1-12-203(1.7) (emphasis added). Allowing a political party's state central committee to preemptively decide whether vacancies are filled by appointment rather than election continues to prevent Colorado voters from the opportunity to choose their representative, instead, placing their fundamental right in the hands of a select few party insiders.

19.    It is an accident of history that Colorado's prior smoke-filled process persisted into the 21st Century, but any historical excuse for that process evaporates when the smoke clears to reveal a false electoral process. HB 25-1315 restricts and impairs the freedom of the people in exercising the franchise by deliberately excluding citizens affiliated with a different political party from voting in these odd-year vacancy elections. The House Bill scheme infringes upon freedom of association in violation of the First Amendment and equal protection in violation of the Fourteenth Amendment to the United States Constitution, as well as the specific restrictions imposed by Article II, Section 5 and Article VII Sections 1 and 11 of the Colorado Constitution.

20.    The Fourteenth Amendment prohibits Colorado from enacting laws that would deprive "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1 By conditioning the right to vote in open single-district elections on party registration status, the House Bill impermissibly privileges some eligible voters while disenfranchising others. The House Bill facially violates the Fourteenth Amendment's equal protection mandate.

21.     The First Amendment similarly guarantees all citizens the right to freely express political opinions through party affiliation and to choose whether to associate with political parties. A law that substantially burdens these core expressive and associational rights, such as the House Bill challenged here, strikes at the very core of the political rights of Colorado voters, and cannot be justified as a mere regulation of the existing vacancy committee process.

22.     The House Bill fares no better under Colorado's Constitution. Article II, Section 5 of the Colorado Constitution provides that "**[a]ll elections shall be free and open**; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." (emphasis added). Yet the House Bill closes the electoral process to only those voters who are registered in the same party as a lawmaker vacating their seat. This disenfranchisement is arbitrary and does not serve any state interest, let alone a compelling one.

23.     Article VII, Section 1 of the Colorado Constitution provides that Coloradans who are eligible and registered to vote are "qualified to vote at **all elections**." (emphasis added). Because there is no special exception that permits vacancy elections to be closed to individuals merely on the basis of party registration, the House Bill violates this provision of the Colorado Constitution.

24.     Article VII, Section 11 of the Colorado Constitution requires the General Assembly to pass laws that "secure the purity of elections, and guard against abuses of the elective franchise." The House Bill taints the purity of elections in Colorado by disenfranchising certain voters based on party registration status. As such, the House Bill clearly violates this section of the Colorado Constitution.

25.    Because the Colorado Legislature included the right to vote on legislative vacancies with the enactment of HB 25-1315 and creation of vacancy elections, it must afford equal protection to all Coloradans to access the ballot.

26.    HB 25-1315 is not only facially unconstitutional; it is unconstitutional as applied to Plaintiffs Angela Stevens and June Waller (together, the "Individual Plaintiffs"). Each Individual Plaintiff will be unconstitutionally disenfranchised in any legislative vacancy election under HB 25-1315 that fills the vacancy of a seat occupied by the party opposite of their registered party. The Individual Plaintiffs are denied their constitutional right to vote in every such election.

27.    By denying certain individuals the right to vote in vacancy elections based on their party affiliation, the House Bill violates the First and Fourteenth Amendments and Colorado State Constitution as applied to the Individual Plaintiffs.

### PARTIES

28.    Plaintiff League of Women Voters of Colorado is the Colorado affiliate of the League of Women Voters of the United States ("LWV"), a grassroots, nonpartisan, community-based political organization dedicated to encouraging informed and active participation in government and the political process through advocacy and education. LWVCO is dedicated to promoting civic engagement and protecting democracy.

29.    The LWV was founded in 1920 as an outgrowth of the struggle to win voting rights for women. LWV is organized in more than 850 communities and has affiliates in every state and the District of Columbia with more than one million members and supporters nationwide. The work of the League is done primarily by volunteers who work together tirelessly across state lines to help accomplish their goals.

30.    LWVCO has approximately 2300 members across Colorado. It has members affiliated with the Democratic and Republican parties, as well as members affiliated with many, if

not all, of the minor parties recognized in Colorado. LWVCO is proud to serve, and is always working on, vital issues of concern to its members and the public. LWVCO's programs supporting its mission to empower voters, defend democracy, and provide fair access to the ballot, include: registering voters; organizing and leading local and state ballot issue education programs; organizing nonpartisan candidate forums; sponsoring legislative coffees throughout the state; running the nonpartisan VOTE411.org website for Colorado, and working with federal district courts to register newly naturalized citizens.

31.     LWVCO has standing to bring this action to further its organizational goals and because its members have standing to sue in their own right. The interests this action seeks to protect are central to the LWVCO's purpose of promoting government that is representative, accountable, responsive, and that ensures opportunities for effective and inclusive voter participation in government decision-making. Neither the claims asserted nor the relief requested in this action require the participation of individual members, although Plaintiffs Angela Stevens and June Waller have also brought individual claims in this action.

32.     Plaintiff Angela Stevens lives in Colorado. She is a registered voter and a member of the LWVCO.

33.     Plaintiff June Waller lives in Colorado. She is a registered voter and a member of the LWVCO.

34.     Defendant Jena Griswold is the Colorado Secretary of State. She is responsible for administering and enforcing Colorado's election laws and for inspecting and reviewing the actions of county clerks and recorders. She is sued in her official capacity only.

### JURISDICTION AND VENUE

35.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

36.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the First and Fourteenth Amendment to the United States Constitution.

37.    Plaintiffs' claims under Article II and Article VII of the Colorado Constitution are within this Court's pendent jurisdiction to hear "all other claims that are so related . . . that they form part of the same case or controversy," 28 U.S.C. § 1367(a), and that arise "from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

38.    This Court has personal jurisdiction over the Secretary of State, who is sued in her official capacity only.

39.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim have occurred in this district, including the enactment, administration, and enforcement of HB 25-1315 by Colorado state lawmakers.

40.    This Court has authority to enter declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

## STATUTORY BACKGROUND

### A.    Party Insiders Filled Vacancies Prior to Enactment of HB 25-1315.

41.    The procedure for filling vacancies in the Colorado General Assembly prior to the enactment of HB 25-1315 in C.R.S. § 1-12-203 is described in Paragraphs 42-44 below.

42.    Pursuant to C.R.S. § 1-12-203(1), "[i]n the event of a vacancy in the general assembly … the vacancy shall be filled by the appropriate vacancy committee … of the same political party and of the same representative or senatorial district represented by the former member whose seat is vacant."

43.    The vacancy committee—comprised of a handful to a few hundred individuals, including party officers or local precent organizers—determined "by a majority vote" who filled

the vacant seat. C.R.S. §1-12-203(3)(a). The lawmaker, appointed by the vacancy committee, served until the next general election "after the vacancy occurs," at which point the seat would be filled by general election by Colorado voters. C.R.S. §1-12-203(1). The result of this process was that lawmakers who were not voted into office by the people held their representative position for close to four years, nearly an entire term.

44.     Prior to the enactment of HB25-1315, Colorado's vacancy process was highly scrutinized due to the number of legislatures appointed by "party insiders." Critics of the Colorado vacancy process voiced concerns that "appointment through the vacancy committee process gave [certain representatives] an unfair advantage."[8]

**B.     HB 25-1315 Is Enacted to Reform the Old System, but, Instead, It Disenfranchises Colorado Voters in Violation of the U.S. and Colorado Constitutions.**

45.     HB 25-1315 came on the heels of the growing concern surrounding Colorado's vacancy process.

46.     A true and correct copy of HB 25-1315, as enacted and signed, is attached hereto as **Exhibit A.**

47.     The stated goal of HB 25-1315 was to reform the State's vacancy process by shortening the amount of time an appointed representative may serve prior to an election, putting the decision back in the hands of Colorado voters, but the appointed representative's terms is actually *extended* by the House Bill.

48.     Under HB 25-1315 vacancy-appointed representatives either seek election during the regular general election in even years, or run in a special vacancy election that would take place

---

[8] Brandon Richard, *Colorado Leaders Explore Changing How Vacant Legislative Seats are Filled*, Denver7 (last updated January 8, 2025 at 7:19 AM), https://www.denver7.com/news/local-news/colorado-leaders-explore-changing-how-vacant-legislative-seats-are-filled.

during the November statewide election that occurs in odd years. C.R.S. § 1-12-203(1.5)(a)-(d).

The House Bill provides for a different process in each of four possible scenarios:

| Scenario 1 | Scenario 2 | Scenario 3 | Scenario 4 |
|---|---|---|---|
| If a seat becomes vacant *during session or by* July 31 | If a seat becomes vacant *after* July 31 | If a seat becomes vacant *during session or by* July 31 | If a seat becomes vacant *after* July 31 |
| In an *even-numbered year* | In an *even-numbered year* | In an *odd-numbered year* | In an *odd-numbered year* |
| The new vacancy committee process will take place to elect a temporary candidate. | The new vacancy committee process will take place to elect a temporary candidate. | The new vacancy committee process will take place to elect a temporary candidate. | The new vacancy committee process will take place to elect a temporary candidate. |
| The selected candidate would then run for election in the normally scheduled general election in November of that year. | A vacancy election would not be held until the following odd-year November election. If the seat was already on cycle to become vacant for that even-year, the general election held in November of that year would continue as normal. | A vacancy election would be held in November of the same year. | The selected candidate would then run for election in the next general election in the even-year. |

49.     The "reform" of HB 25-1315 not only fares no better than the prior system, it completely disenfranchises Colorado voters based on their political affiliation.

50.     First, under Section 1.5(c) of the House Bill, "the only voters who may vote in the Major Political Party Vacancy Election are voters who (i) are, as of the twenty-second day before the major political party vacancy election, *affiliated with the same political party as the former member whose seat is vacant or unaffiliated*…."

51.     Second, the House Bill provides an opt-out clause for holding vacancy elections altogether, by providing that, pursuant, to § 1-12-203(1.7), "*a political party* may choose to continue to fill a vacancy in the general assembly by vacancy committee … rather than by a major political party vacancy election … if at least three-fourths of the total voting membership of the *party's state central committee affirmatively votes to do so*." Section 1-12-203(1.7) allows for this vote by the state central committee to occur each time a vacancy election would be held. *Id.* (providing that the state central committee's vote must occur "no later than October 1 of the year preceding the year in which a major political party vacancy election would be held."). This opt-out clause further strips Colorado voters' fundamental right to participate in elections freely by handing the power to determine who represents the people of Colorado into the hands of a select few.

52.     The House Bill also prohibits newly appointed committeepersons from participating in filling a vacancy until ninety-one days into their appointment. Further, if the Senatorial Central Committee or State Representative Central Committee fails to select a vacancy committee, then the vacancy committee will be compromised of either the Senatorial Central Committee or State Representative Central Committee. In addition, the bill provides that county commissioners "who are members of the political party and reside within the State Senatorial or State Representative district" will be added to such committees and take part in the selection of a vacant seat in the general assembly. § 1-3-103(1)(a), (14).

### C.     HB 25-1315 Faced Rightful Criticism Leading Up to and Following Its Enactment.

53.     Although the House Bill was a bipartisan effort, it faced rightful criticism. In a hearing in the Colorado House State, Civic, Military, and Veterans Affairs on April 7, 2025, bill sponsors were questioned about possible voter disenfranchisement with the passing of the House

Bill. The bill sponsors—Democratic representatives Emily Sirota and Senator Mike Weissman, and Republican Representative House Minority Leader Rose Pugliese and Senator Barbara Kirkmeyer—framed the vacancy elections as more akin to primary elections, where only registered members of a political party may vote.[9]

54.     In the same hearing, the bill sponsors acknowledged a proposed amendment by the League of Women Voters of Colorado to open the proposed vacancy elections to the entire electorate, which would have made the House Bill's replacement of the prior committee selection process constitutional. In response, lawmakers ignored the issue of constitutionality, ironically recognizing that the bill would disenfranchise anyone not registered with the legislator's party: "I guess the question is, is it really a general election, which is what [League of Women Voters of Colorado is] articulating, or is it filling a vacancy that voters previously installed an individual from a specific party?"[10]

55.     In preferring to allow the incumbent party to control the vacancy, the sponsors of HB 25-1315 acknowledged that they *could have* implemented a "full on" special election process when a vacant seat arose, but that the cost of an additional election was their main reason for not using this option.[11] Saving dollars is not a compelling state interest that outweighs each Coloradan's right to vote in an election to fill the unexpired term of their state legislator.

---

[9] *See* House Committee on State, Civic, Military & Veteran Affairs Hearing [April 7, 2025] https://sg001-harmony.sliq.net/00327/Harmony/en/PowerBrowser/PowerBrowserV2/20251125/33/17191#agenda_

[10] *Id.*

[11] *Id.*

56.     When interviewed about the House Bill by the Colorado Sun, Chairman of the Colorado Democratic Party, Shad Murid, said he was heavily involved in drafting the House Bill and that it was modeled after the system used in Tennessee.[12] However, a crucial difference in the laws is that the Tennessee Constitution *does not limit vacancy voting* to voters from specific political parties and unaffiliated voters. *See* Tenn. Const. Art. II § 15.

57.     The Colorado General Assembly adopted HB 25-1315 during its 2025 regular session in early May 2025, and the House Bill was signed into law by Governor Jared Polis on May 12, 2025. The House Bill took effect officially on August 6, 2025. The House Bill passed with the support of 85 out of 100 state legislatures.[13]

58.     HB 25-1315 does nothing to remedy the voter disenfranchisement in Colorado's vacancy process and unconstitutionally violates the rights of Colorado voters.

59.     Since HB 25-1315 was enacted in August 2025, at least four Colorado state legislators have publicly announced their resignations, triggering the new vacancy election process: State Rep. Ryan Aragost (R-Berthoud)[14], State House Minority Leader Rose Pugliese (R-

---

[12] *See* Jesse Paul, *Vacancy-Appointed Colorado Lawmakers Would Have to Run to Keep Their Seat After a Year Under Reform Proposal*, The Colorado Sun (Apr. 1, 2025), https://coloradosun.com/2025/04/01/colorado-vacancy-committee-reform-bill-2025/.

[13] Hannah Metzger, *Colorado Legislature Passes Reforms for Controversial Vacancy-Filling Process*, Westword (May 7, 2025), https://www.westword.com/news/colorado-legislature-reforms-vacancy-filling-process-24457311/.

[14] Sara Wilson, *Colorado State Rep. Ryan Armagost Resigns Early*, Colorado Newsline (Aug. 21, 2025 at 4:26 PM), https://coloradonewsline.com/briefs/colorado-state-rep-ryan-armagost-resigns-early/#:~:text=By:%20Sara%20Wilson%20%2D%20August%2021%2C%202025%204:26%20pm&text=Wilson/Colorado%20Newsline)-,Colorado%20state%20Rep.,YOU%20MAKE%20OUR%20WORK%20POSSIBLE.

Colorado Springs)[15], State Rep. Shannon Bird (D-Westminster)[16], State Rep. Dafna Michaelson Jenet (D-Commerce City).[17]

60.     In the absence of injunctive relief, all Colorado voters who are affiliated with a party other than the party that previously held a legislative seat will be unable to vote in future major political party vacancy elections to fill these and future vacant seats.

**D.     HB 25-13-15 Violates the U.S. Constitution On Its Face and As Applied.**

61.     The House Bill is facially unconstitutional. The First Amendment of the United States Constitution protects fundamental rights, including the right to engage in political expression, participation, and association. U.S. Const. Amend. I. ("Congress shall make no law … abridging the freedom of speech … or the right of the people peacefully to assemble …."). These protections apply to the right to meaningfully participate in the electoral process like selecting public officials and lawmakers of the voters' choosing or associating with a political party.

62.     Voting and being affiliated with a political party is the quintessential form of political expression. HB 25-1315 infringes upon the First Amendment right to engage in political expression by conditioning the right to vote in a public election on a voter's political party affiliation or non-affiliation thereby restricting access to the ballot.

---

[15] Bente Birkeland, *House Minority Leader Rose Pugliese Resigns*, CPR News (September 15, 2025 at 10:53 AM), https://www.cpr.org/2025/09/15/house-minority-leader-rose-pugliese-resigns/.

[16] Lindsey Toomer, *Shannon Bird to Resign from Colorado Legislature to Focus on Congressional Race*, Colorado Newsline (December 8, 2025 at 11:15 AM), https://coloradonewsline.com/briefs/shannon-bird-resign-colorado-legislature/#:~:text=1-.,Shannon%20Bird%20to%20resign%20from%20Colorado%20Legislature%20to%20focus%20on,convene%20to%20find%20her%20replacement.

[17] Nick Coltrain, *One of Top Colorado Democrats in State Senate Resigns to Take New Job*, The Denver Post (February 10, 2026 at 2:53 PM), https://www.denverpost.com/2026/02/10/colorado-senate-dafna-michaelson-jenet-resignation/?share=dslcsja2cd0gisaeltm6.

63.    The Fourteenth Amended guarantees that "[n]o state shall make or enforce any law which shall abridge the privileges … of citizens of the United States; … nor deny to any person … the equal protection of the laws." U.S. Const. Amend. XIV § 1.

64.    HB 25-1315 is unconstitutional on its face in violation of the Fourteenth Amendment. By conditioning a Colorado voter's right to participate in a vacancy election based upon their political party affiliation, HB 25-1315 arbitrarily restricts political participation for Colorado voters.

65.    By denying Colorado voters an equal voice in selecting their representatives, HB 25-1315 flips democracy on its head and transforms public, vacant elections into an exclusionary party-controlled exercise.

66.    HB 25-1315 is also unconstitutional as applied to LWVCO members Angela Stevens and June Waller.

67.    Ms. Stevens is a registered Democrat who will be unconstitutionally disenfranchised in any legislative vacancy election under HB 25-1315 that fills the vacancy of a Republican seat because that election will only be open to Republicans and unaffiliated voters. Ms. Stevens will be denied her constitutional right to vote in such an election.

68.    Ms. Waller is a registered Democrat who will be unconstitutionally disenfranchised in any legislative vacancy election under HB 25-1315 that fills the vacancy of a Republican seat because that election will only be open to Republicans and unaffiliated voters. Ms. Waller will be denied her constitutional right to vote in such an election.

69.    By denying certain individuals the right to vote in vacancy elections based on their party affiliation, the House Bill violates the First and Fourteenth Amendments as applied to the Individual Plaintiffs.

**E.    HB 25-1315 Violates the Colorado State Constitution On Its Face and As Applied.**

70.     The House Bill violates several sections of the Colorado State Constitution. Article II, Section 5 provides that "All elections shall be free and open; and no power … shall at any time interfere to prevent the free exercise of the right to suffrage." HB 25-1315 violates Article II, Section 5 of the Colorado State Constitution. The House Bill perpetuates a closed election for vacancy elections only available to those based on their political affiliation, thereby interfering with the Colorado people's "right to suffrage." Co. Const. Art. II § 5.

71.     HB 25-1315 violates Article VII, Section 1 of the Colorado State Constitution. Article VII, Section I provides that "[e]very citizen of the United States who has attained the age of eighteen years … shall be qualified to vote *at all elections* …." (emphasis added). HB 25-1315 infringes on this right by disqualifying otherwise qualified Colorado voters on the basis of their political party affiliation.

72.     HB 25-1315 violates Article VII, Section 11 of the Colorado State Constitution. Section 11 provides, "[t]he general assembly shall pass laws to secure the purity of elections, and guard against abuses of the elective franchise." The House Bill, at its core, facilitates a system in which candidates become elected without being chosen by the will of all Colorado voters. By limiting who can participate in vacancy elections, the House Bill does fails to "secure the purity of elections" and undermines the core of democracy: free and open elections to all Colorado voters.

73.     HB 25-1315 is also unconstitutional as applied to LWVCO members Angela Stevens and June Waller. Each Individual Plaintiff will be unconstitutionally disenfranchised in any legislative vacancy election under HB 25-1315 that fills the vacancy of a seat occupied by the party opposite of their registered party. The Individual Plaintiffs are denied their constitutional right to vote in every such election.

74.    By denying certain individuals the right to vote in vacancy elections based on their party affiliation, the House Bill violates the Colorado State Constitution as applied to the Individual Plaintiffs.

## NEED FOR RELIEF

75.    The House Bill places a severe burden on Plaintiffs by creating one-party elections—with the opportunity for a vacancy committee to override the need for a vacancy election entirely—any time there is a vacancy in a legislative seat.

76.    HB 25-1315 makes it effectively impossible for LWVCO to conduct nonpartisan activities with respect to "Get Out the Vote" initiatives, voter education, and voter outreach. LWVCO regularly produces vote planning guides based on the assumption that every registered voter in a district can vote in the election. But that is not the case under HB 25-1315. The House Bill's unusual and exclusionary structure makes it unworkable for LWVCO to offer simple, straightforward nonpartisan guidance that works for all voters. Further, the exclusion of different voters in each vacancy election increases the risk of confusion or inadvertent misinformation if every exception is not carefully explained, creating unduly prohibitive burdens on the League's time and resources. In other words, HB 25-1315 prevents LWVCO from engaging in its mission completely with respect to these elections.

77.    LWVCO members Angela Stevens and June Waller are barred completely from voting in legislative vacancy elections under HB 25-1315 that fill the vacancy of a seat occupied by the party opposed to their respective registered parties. This substantial restriction on Plaintiffs' core constitutional rights to engage in political speech, freedom of expression by affiliating with a political party, and exercise their right to vote is a severe and unconstitutional burden.

## COUNT I

### VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

78.    Plaintiffs repeat and reincorporate the foregoing paragraphs as if fully set forth herein.

79.    Plaintiffs' rights to speech, express, and association are protected by the First and Fourteenth Amendments to the United States Constitution. The ability to participate and vote in elections is a fundamental right for which Fourteenth Amendment protection is at its apex. As was the case in *Kramer v. Union Free School District*, *supra,* "[t]he sole issue in this case is whether the additional requirements of [HB 25-1315] – requirements which prohibit some district residents who are otherwise qualified by age and citizenship from participating in … elections – violate the Fourteenth Amendment's command that no State shall deny persons equal protection of the laws." 395 U.S. at 626. HB 25-1315's structure, denying the franchise to those who are not affiliated with the party of a resigned or deceased legislator, simply does not pass constitutional muster.

80.    HB 25-1315 precludes Colorado voters from freely and fairly accessing the ballot and participating in elections, in violation of their First and Fourteenth Amendment rights.

81.    When analyzing the constitutionality of HB 25-1315, a Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

82.     Laws "imposing severe burdens must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review…" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997).

83.     The burden on Plaintiffs' core constitutional rights to engage in political speech, freedom of expression by affiliating with a political party, and exercising their right to vote is severe. HB 25-1315 operates to perpetuate the political status quo and enshrines one-party elections to select legislators who vote on laws that all Coloradans—regardless of party affiliation—must follow. Thus, the challenged Colorado Bill is subject to strict scrutiny. *See Kramer,* 395 U.S. at 633.

84.     HB 25-1315, of which Plaintiffs seek relief, cannot survive strict scrutiny, as it is not narrowly tailored to serve a compelling governmental interest.

85.     Defendant has no cognizable interest in effectively excluding certain Colorado voters from vacancy elections and barring their access to the ballot.

86.     HB 25-1315, from which Plaintiffs seek relief, is not narrowly tailored to serve a compelling or even legitimate state interest, nor is the clause sufficiently important to justify the significant burdens on Plaintiffs' First and Fourteenth Amendment rights.

87.     As applied to the Individual Plaintiffs, HB 25-1315 violates the First and Fourteenth Amendments of the United States Constitution.

## COUNT II

### VIOLATIONS OF ARTICLE II SECTION 5 & ARTICLE VII SECTIONS 1 AND 11 OF THE COLORADO STATE CONSTITUTION

88.     Plaintiffs repeat and reincorporate the foregoing paragraphs as if fully set forth herein.

89.     Article II, Section 5 of the Colorado Constitution provides that "[a]ll elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."

90.     Article VII, Section 1 of the Colorado Constitution provides that "[e]very citizen of the United States who has attained the age of eighteen years … shall be qualified to vote at all elections …."

91.     Article VII, Section 11 of the Colorado Constitution provides "[t]he general assembly shall pass laws to secure the purity of elections, and guard against abuses of the elective franchise."

92.     HB 25-1315 places a significant unnecessary burden on Plaintiffs and similarly situated voters.

93.     HB 25-1513 is not narrowly tailored to advance a compelling Colorado state interest.

94.     On its face, HB 25-1513 violates Article II, Sections 5 and Article VII, Sections 1 and 11 of the Colorado State Constitution.

95.     As applied to the Individual Plaintiffs, HB 25-1315 violates Article II, Section 5 and Article VII, Sections 1 and 11 of the Colorado State Constitution.

## REQUEST FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiffs respectfully request that the Court afford the following relief:

a.   Enter a declaratory judgment that HB 25-1513 is unconstitutional on its face as it violates the First and Fourteenth Amendments to the United States Constitution;

b.   Enter a declaratory judgment that HB 25-1513 violates Article II, Section 5, Article VII, Section 1, and Article VII, Section 11 of the Colorado State Constitution.

- 25 -

c.  Enjoin the Defendant from enforcing the voter restriction clause of HB 25-1513;

d.  Award the Plaintiffs the cost of this action together with their reasonable attorneys' fees and expenses pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988; and

e.  Retain jurisdiction of this action and grant Plaintiff any such other relief this Court deems necessary and proper.

Respectfully submitted,


Dated: May 15, 2026                    By:    */s/ Michael Dockterman*
                                              Michael Dockterman
                                              Cara Lawson
                                              **McDermott Will & Schulte LLP**
                                              444 West Lake Street
                                              Chicago, IL 60606-0029
                                              Tel: (312) 372-2000
                                              Fax: (312) 984-7700
                                              mdockterman@mcdermottlaw.com
                                              clawson@mcdermottlaw.com

                                              Bryan L. Sells
                                              **The Law Office of Bryan L. Sells, LLC**
                                              Post Office Box 5493
                                              Atlanta, Georgia 31107-0493
                                              (404) 480-4212 (voice/fax)
                                              bryan@bryansellslaw.com

                                              *Attorneys for Plaintiffs*